1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | ABU KHALID ABDUL-LATIF, | CASE NO. C13-1715JLR

11 | Petitioner, | ORDER DENYING 28 U.S.C.
§ 2255 MOTION

12 | v.

13 | UNITED STATES OF AMERICA,

14 | Respondent.

15 | **I.    INTRODUCTION**

16 |     Before the court is Petitioner Abu Khalid Abdul-Latif's 28 U.S.C. § 2255 motion

17 | to vacate, correct, or set aside his sentence. (*See* Mot. (Dkt. # 1).)  Having reviewed the

18 | motions, all submissions filed in support of or in opposition thereto, the balance of the

19 | record, and the applicable law, and being fully advised, the court DENIES Mr. Abdul-

20 | Latif's 28 U.S.C. § 2255 motion (Dkt. # 1).

21

22

ORDER- 1

## II.    BACKGROUND

On December 6, 2012, Mr. Abdul-Latif pled guilty to conspiracy to murder officers and employees of the United States and conspiracy to use weapons of mass destruction. (*See United States of America v. Abu Khalid Abdul-Latif*, No. 2:11-cr-00228-JLR-1 (W.D. Wa.) ("Criminal Dkt.") Dkt. # 202 ("Plea Agreement").) Mr. Abdul-Latif's convictions stem from his involvement in a plot to attack the Military Entrance Processing Station in Seattle with machine guns and hand grenades. (*See id.*; *see also* Resp. (Dkt. # 8.) at 2.) Under the Plea Agreement, Mr. Abdul-Latif waived "any right to bring a collateral attack against the conviction and sentence . . . except as it may relate to the effectiveness of legal representation." (Plea Agreement ¶ 12(b).) He also waived the "right to appeal a finding of guilt or any pretrial rulings." (*Id.* ¶ 4(h).) The undersigned judge administered the plea colloquy required by Federal Rule of Criminal Procedure 11 to Mr. Abdul-Latif. (*See* 12/6/12 Minute Entry (Criminal Dkt. # 201).)

Mr. Abdul-Latif was sentenced on March 25, 2013. (*See* 3/25/13 Minute Entry (Criminal Dkt. # 219); Judgment (Criminal Dkt. # 220).) The court imposed a sentence of 18 years' imprisonment and 10 years' supervised release. (*See* 3/25/13 *Minute Entry*; *Judgment*.) Mr. Abdul-Latif did not file a direct appeal. (*See generally* Criminal Dkt.) Instead, Mr. Abdul-Latif filed this motion requesting relief under 28 U.S.C. § 2255.

## III.    ANALYSIS

In order to state a cognizable claim under 28 U.S.C. § 2255, a petitioner must assert that he is in custody in violation of the Constitution or laws of the United States, that the district court lacked jurisdiction, that the sentence exceeded the maximum

1  allowed by law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. §

2  2255(a).  Mr. Abdul-Latif argues that he is in custody in violation of the Constitution

3  because (1) his own defense counsel coerced him to enter a guilty plea, (2) certain

4  evidence against him was improperly obtained pursuant to the Foreign Intelligence

5  Surveillance Act ("FISA"), and (3) his defense counsel were otherwise ineffective.  (Mot.

6  at 4.)   As discussed below, Mr. Abdul-Latif has procedurally defaulted on the first two

7  claims and his ineffective counsel claim fails on the merits.

8  **A.      Request to Appoint Counsel**

9         As a preliminary matter, the court denies Mr. Abdul-Latif's request to appoint

10  counsel.  (*See* Supplement (Dkt. # 9.)   Pursuant to 18 U.S.C. § 3006A, a district court

11  may appoint counsel in the "interest of justice" in a case brought under 28 U.S.C. § 2255.

12  18 U.S.C. § 3006A(2)(B); *Weygant v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).  "In

13  deciding whether to appoint counsel in a habeas proceeding, the district court must

14  evaluate the likelihood of success on the merits as well as the ability of the petitioner to

15  articulate his claims pro se in light of the complexity of the legal issues involved."

16  *Weygant*, 718 F.2d at 954.  First, as discussed below, Mr. Abdul-Latif's claims are not

17  successful on the merits.  Second, the issues presented in Mr. Abdul-Latif's motion are

18  not particularly complex.  (*See* Mot.)  Finally, Mr. Abdul-Latif has demonstrated that he

19  is able to both effectively articulate his claims and cogently respond to the Government's

20  arguments. (*See* Mot.; Supplement; Reply (Dkt. # 10).)  Based on these findings, the

21  court concludes that appointment of counsel is not warranted, and that prior appointment

22

1 | of counsel would not have affected the court's disposition of this motion. Therefore, the

2 | court denies Mr. Abdul-Latif's request to appoint counsel.

3 | **B.    Evidentiary Hearing**

4 | On a similar note, the court determines that an evidentiary hearing on this matter is

5 | unnecessary. Under 28 U.S.C. § 2255, the court must hold an evidentiary hearing unless

6 | "the motion and the files and records of the case conclusively show that the prisoner is

7 | entitled to no relief." 28 U.S.C. § 2255; *see Frazer v. United States*, 18 F.3d 778, 781

8 | (9th Cir. 1994). However, "[n]o hearing is required if the allegations, viewed against

9 | the record, either fail to state a claim for relief or are so palpably incredible or patently

10 | frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158

11 | (9th Cir. 1989) (internal quotation marks omitted). Here, most of Mr. Abdul-Latif's

12 | arguments are procedurally barred. Furthermore, the record is a sufficient basis on which

13 | to judge Mr. Abdul-Latif's allegations of ineffective counsel. Accordingly, the court

14 | chooses to exercise its discretion not to hold an evidentiary hearing. *See Shah*, 878 F.2d

15 | at 1158.

16 | **C.    Coerced Guilty Plea**

17 | Mr. Abdul-Latif alleges that his defense counsel visited him on the day he entered

18 | his guilty plea and "coerced, badgered, and harassed [him] to sign a deal," which he

19 | consented to do "out of pressure." (Mot. at 4.) This claim is procedurally defaulted.

20 | In the context of a 28 U.S.C. § 2255 motion, procedural default occurs when a

21 | habeas petitioner fails to raise a claim on direct appeal. *See Massaro v. United States*,

22 | 538 U.S. 500, 504 (2003). "Where a defendant has procedurally defaulted a claim by

1  failing to raise it on direct review, the claim may be raised in habeas only if the defendant

2  can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually

3  innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations

4  omitted).  Regarding the standard for showing cause and actual prejudice, it is a "well

5  well-settled principle that to obtain collateral relief a prisoner must clear a significantly

6  higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152,

7  166 (1982).

8       Here, Mr. Abdul-Latif could have raised the issue of whether his guilty plea was

9  voluntary both before the district court and on appeal, yet failed to do so.  First, Mr.

10  Abdul-Latif could have moved to withdraw his guilty plea in the district court.  *See* Fed.

11  R. Crim. P. 11(d)(2)(B).  Construing Mr. Abdul-Latif's briefing liberally, it appears that

12  he contends that the conditions of his confinement at the Federal Detention Center

13  affected his ability to raise the issue at that time.  (*See, e.g.*, Mot. at 6); *Bernhardt v. L.A.*

14  *Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se

15  pleadings liberally, including pro se motions[.]").  Since his conviction, however, Mr.

16  Abdul-Latif has served his prison sentence at the Federal Correctional Institution,

17  Florence—not at the Federal Detention Center.  (Resp. at 5; *see* Judgment at 2.)  And yet,

18  Mr. Abdul-Latif still has not filed an appeal.  (*See generally Criminal Dkt.*; Resp. at 2.)

19  Even crediting Mr. Abdul-Latif's assertion about the conditions at the Federal Detention

20  Center, these assertions do not excuse his failure to raise the instant issue on direct review

21  after his departure from that center.  Indeed, Mr. Abdul-Latif makes no attempt to show

22  cause for failing to file an appeal, and instead focuses on asserting the many ways in

1 which he has been allegedly "prejudiced" over the course of his case. (*See* Reply at 1-3.)

2 This tactic is insufficient as a matter of law. Because Mr. Abdul-Latif has not

3 demonstrated sufficient cause for failing to raise this claim on direct review, the claim is

4 procedurally barred.

5 **D.    FISA**

6      On this claim, Mr. Abdul-Latif attempts to re-litigate arguments already rejected

7 by the district court. Specifically, Mr. Abdul-Latif alleges that certain evidence against

8 him was improperly obtained pursuant to the Foreign Intelligence Surveillance Act

9 ("FISA"), and argues that the procurement and use of this evidence violated the First

10 Amendment and constituted prosecutorial misconduct. (Mot. at 4; Reply at 11-14.) The

11 defense already presented similar arguments in its pre-trial Motion to Suppress Fruits of

12 Surveillance Conducted Pursuant to the Foreign Intelligence Surveillance Act. (*See*

13 Criminal Dkt. # 82.) The court rejected each of these arguments at that time. (8/30/12

14 Order (Criminal Dkt. # 140).)

15      This claim fails now because under the Plea Agreement, Mr. Abdul-Latif waived

16 the right to "appeal . . . any pretrial rulings," as well as "any right to bring a collateral

17 attack against the conviction and sentence . . . except as it may relate to the effectiveness

18 of legal representation." (Plea Agreement ¶ 4(h ¶ 12(b).) Mr. Abdul-Latif cites *Hurlow*

19 *v. United States* for the proposition that a habeas petitioner may overcome a plea

20 agreement's waiver of collateral review by alleging that the plea agreement was the

21 product of ineffective assistance of counsel. (*See* Reply at 3); *see also Hurlow v. United*

22 *States*, 726 F.3d 958, 965-66 (7th Cir. 2013). That proposition is inapposite because the

1  court finds that Mr. Abdul-Latif's plea agreement was not in fact the product of

2  ineffective assistance of counsel. *See* Section III.E, *infra*.

3        Even if the Plea Agreement's collateral review waiver were ineffective, the FISA

4  claim would still be procedurally barred. Mr. Abdul-Latif did not even attempt to raise

5  this issue on direct appeal, and once again he has not shown cause for his failure to do so.

6  *See Massaro*, 538 U.S. at 504. Moreover, even if the claim were not procedurally

7  defaulted, the court would reject Mr. Abdul-Latif's arguments for the same reasons that

8  the court rejected these arguments when they were previously raised in a pre-trial motion.

9  (*See* 8/30/12 Order.) For all of these reasons, Mr. Abdul-Latif's FISA claim is meritless.

10  **E.     Ineffective Assistance of Counsel**

11        Mr. Abdul-Latif alleges that his defense counsel were ineffective for three main

12  reasons: (1) they failed to locate an allegedly favorable witness, (2) they failed to obtain

13  certain cellular telephone records from T-Mobile, and (3) they did not provide him

14  certain discovery materials prior to his guilty plea. (Mot. at 4, 7; Reply at 5-10.) As

15  discussed in the following sections, none of these scenarios rises to the level of a

16  constitutional violation.

17        The Sixth Amendment to the United States Constitution guarantees a criminal

18  defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S.

19  668, 687 (1984). To show ineffective assistance, a defendant must prove that (1)

20  "counsel's representation fell below an objective standard of reasonableness" and (2)

21  there "is a reasonable probability that, but for counsel's unprofessional errors, the result

22  of the proceeding would have been different." *Id.* at 688, 694.

With respect to the first prong, the defendant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Judicial scrutiny is highly deferential; there is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id* at 689. With respect to the second prong, in the context of challenges to guilty pleas "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

### 1. Locating a favorable witness

Mr. Abdul-Latif claims that he provided defense counsel with the name of a witness who allegedly had information that the informant in Mr. Abdul-Latif's case "set [him] up" because "[he'd] asked for it." (Mot. at 7.) Mr. Abdul-Latif complains that his counsel did not try hard enough to locate the witness. (*Id.*; Reply at 5.) But Mr. Abdul-Latif cannot establish that counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Mr. Abdul-Latif provided his attorneys only a name and a description that the witness was a "DOC volunteer" who lived in Everett, Washington, and had a son "serving time in state custody." (Mot. at 7.) With nothing more to go on, it is not unreasonable that defense counsel was unable to locate the purportedly favorable witness.

On reply, Mr. Abdul-Latif changes his story and claims that his defense counsel was also aware of "a P.O. Box, cell number, places [the witness is] known to be at, [and] name of the mosque he lives by." (Reply at 5). Even assuming that blame for the witness's unavailability rests on defense counsel's shoulders, Mr. Abdul-Latif does not show that the witness was so crucial to his defense that he would not have accepted the plea agreement had the witness been located. *See Hill*, 474 U.S. at 59. There is no indication—besides Mr. Abdul-Latif's self-serving statement—that this unknown witness would actually have testified in his favor, or to what effect. Indeed, it is telling that Mr. Abdul-Latif pled guilty in December, 2012, when defense counsel still had four months before the trial date to continue trying to locate the witness—a task which Mr. Abdul-Latif insists should have been trivial. As such, even if defense counsel had acted below an objective standard of reasonableness, Mr. Abdul-Latif fails to show that the result of the proceeding would have been different had the witness been located.

### 2. Procuring T-Mobile "records"

Mr. Abdul-Latif next alleges that his counsel were deficient for failing to obtain unspecified "records" from T-Mobile. (Mot. at 7.) These records purportedly show that the informant in Mr. Abdul-Latif's criminal case removed the SD card and switched the SIM card in his cellular phone prior to giving the phone to the police. (*Id.*)

Once again, Mr. Abdul-Latif does not establish that counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Mr. Abdul-Latif admits that his counsel did procure T-Mobile records of the informant's telephone phone calls. (Reply at 7.) These records formed the basis for multiple pre-

1  trial motions.  (*See* Mot. to Dismiss Indictment (Criminal Dkt. # 144 ); Mot. to Suppress

2  Evidence (Criminal Dkt. # 166).)  Mr. Abdul-Latif provides no credible reason to think

3  that any other "records" from T-Mobile exist, let alone records that show when a

4  particular customer changed the data cards in his phone.

5        Additionally, Mr. Abdul-Latif cannot show a reasonable probability that, but for

6  such records, he would not have pleaded guilty.  He alleges that such records would show

7  the informant "deliberately manipulated and destroyed evidence," but the defense already

8  raised the issue of failure to preserve evidence in its pre-trial motions.  (*See, e.g.*, Mot. to

9  Dismiss Indictment; Mot. to Suppress Evidence.)   These motions were outstanding at the

10  time Mr. Abdul-Latif pleaded guilty, and he makes no showing how additional records

11  would have augmented those motions or otherwise aided his defense.   As such, even if

12  defense counsel's conduct had fallen "outside the wide range of professionally competent

13  assistance,"  Mr. Abdul-Latif fails to show that the result of the proceeding would have

14  been different had the "records" been procured.  *See Strickland*, 466 U.S. at 690.

15        **3.  Providing certain discovery materials prior to plea**

16        Mr. Abdul-Latif alleges that his counsel did not provide him with either the

17  revised transcripts of recorded conversations between himself, his co-defendant and the

18  informant or his co-defendant's confession prior to Mr. Abdul-Latif's guilty plea.  (Mot.

19  at 4; Reply at 9.)  Assuming that the defense counsel actually did not provide these

20

21

22

ORDER- 10

1  materials to Mr. Abdul-Latif,[1] and that such an omission would fall outside the wide

2  range of professionally competent assistance, Mr. Abdul-Latif once again fails to show

3  that, but for omission of the transcripts, he would not have pleaded guilty and would have

4  insisted on going to trial. *See Hill*, 474 U.S. at 59.

5      Mr. Abdul-Latif fails to identify any specific portion of the revised transcript

6  which would affect his decision to plead guilty. Neither does he claim that the facts he

7  swore to in the Plea Agreement are untrue. At one point, Mr. Abdul-Latif highlights a

8  purported discrepancy between the co-defendant's and informant's statements as to

9  whether their "original plan was to attack a MEPS" (presumably a "military entrance

10  processing station") or to attack Fort Lewis. (*See* Reply at 9.) But the court is at a loss as

11  to how this supposed discrepancy shows that the Plea Agreement is false, or aids Mr.

12  Abdul-Latif's case in any other way. In short, Mr. Abdul-Latif provides no explanation

13  as to why access to these discovery materials would have changed his decision to admit

14  his guilt. Therefore, his claim for ineffective assistance of counsel fails.

15  **F.    Additional Grounds**

16      Mr. Abdul-Latif filed two submissions after the Government's response: a

17  submission purporting to add additional grounds to his habeas petition and a reply. (*See*

18  Supplement; Reply). Because Mr. Abdul-Latif is pro se, the court must construe his

19  submissions liberally. *See Bernhard.*, 339 F.3d at 925. Accordingly, the court treats Mr.

20

21

    [1] The court notes that Mr. Abdul-Latif was nonetheless familiar enough with the recordings to
22  request that the government make hand-written modifications to the statement of facts in the Plea
    Agreement to reflect his understanding of the recordings. (Resp. at 8.)

ORDER- 11

1 | Abdul-Latif's supplemental filing as an amendment to his petition and considers the

2 | additional claims raised within.

3 | First, Mr. Abdul-Latif accuses the informant in his criminal case of "witness

4 | tampering." (Supplement at 1.) Supposedly, the informant threatened the informant's

5 | ex-wife with violence to prevent her from cooperating with "investigators" and,

6 | according to Mr. Abdul-Latif, "there is a high likely [sic] that she has information

7 | beneficial to the defense that could only prove the credibility of my innocence." (*Id.*)

8 | Mr. Abdul-Latif does not explain what information he believes the informant's ex-wife

9 | has, how she came into possession of this information, or how it would be beneficial to

10 | his defense.

11 | Second, Mr. Abdul-Latif accuses Federal Bureau of Investigation agent Albert

12 | Kelly of committing perjury at the grand jury hearing. (*Id.* at 2.) Mr. Abdul-Latif does

13 | not identify what false statements Mr. Kelly allegedly made and does not provide any

14 | substantiating facts or evidence beyond his self-serving declaration that Mr. Kelly

15 | somehow "took part knowingly in misleading the grand jury." (*Id.*).

16 | These accusations are, at best, wild guesses, and, at worst, deliberate fabrications.

17 | To the extent Mr. Abdul-Latif did not raise these issues on direct review, they are

18 | procedurally barred. *See Massaro*, 538 U.S. at 504. Even if they were not procedurally

19 | defaulted, they are "palpably incredible or patently frivolous as to warrant summary

20 | dismissal." *Shah*, 878 F.2d at 1158.

21 | //

22 | //

**G.     Certificate of Appealability**

A petitioner seeking post-conviction relief may appeal a district court's dismissal of a 28 U.S.C. § 2255 motion only after obtaining a certificate of appealability. A certificate of appealability may issue only where a petition has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(C)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the court concludes that Mr. Abdul-Latif is not entitled to a certificate of appealability.

## IV.     CONCLUSION

For the forgoing reasons, the court DENIES Mr. Abdul-Latif's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 (Dkt. # 1).

Dated this 30th day of January, 2014.

_____
JAMES L. ROBART
United States District Judge

ORDER- 13